**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CENTRAL TRANSPORT, LLC, AND VITRAN EXPRESS, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MAINFREIGHT, INC.** | : | **NO. 14-6083** |

**KEARNEY, J.** **February 11, 2015**

**MEMORANDUM**

Plaintiffs seek a declaratory judgment limiting their liability for the value of computer equipment stolen from a non-party Florida company while in transit. After evaluating this Court's discretionary jurisdiction under the Declaratory Judgment Act, this Court declines the exercise of jurisdiction. A remedy will be pursued as the parties may proceed in an action in a Florida federal district court.

Defendant, a transportation company, hired Plaintiffs to transport computer equipment owned by a Florida company from Pennsylvania to Georgia. Unknown forces stole the computer equipment at some point while in transit in February 2014. The Florida owner of the computer equipment filed suit seeking over $236,000 against Defendant in July 2014 in the United States District Court for the Middle District of Florida. By September 2014, Defendant began discussing responsibility for the stolen computer equipment with Plaintiffs. In late October 2014, Plaintiffs filed suit asking this Court to declare that their liability as the carriers of the stolen computer equipment, if any, is limited by the agreements between the parties and a bill of lading. (ECF Doc. No.1 at ¶¶18-21, 23-30)

As detailed herein, this Court declines to jump into this curious theft mystery to interpret parts of the factual and legal issues in Florida. We decline to exercise our discretionary jurisdiction under the Declaratory Judgment Act. Accordingly, this Court grants Defendant's Motion to Dismiss.

## I. Background

On January 30, 2014, Defendant Mainfreight, Inc. ("Mainfreight") contacted Plaintiff Vitran Express, Inc. ("Vitran") to transport computer equipment (the "Freight") owned by Tech Data Corporation ("Tech Data") from Mainfreight's Pennsylvania facility to Jefferson, Georgia. (*Id.* at ¶8) Plaintiff Central Transport, LLC ("Central Transport") served as the interstate carrier because Vitran had "recently ceased operations." (*Id.* at ¶9) Central Transport acted pursuant to an existing agreement with Mainfreight. (*Id.* at ¶11) Mainfreight issued a bill of lading upon loading the Freight on the Central Transport trailer. (*Id.* ¶12)

On February 6, 2014, the Freight was reported stolen.[1] (*Id.* at ¶15) On April 18, 2014, Mainfreight filed a claim with Central Transport seeking $236,600 for the lost Freight. (*Id.* at ¶16) Central Transport denied the claim. (*Id.*)

On July 25, 2014, three months before Plaintiffs filed the instant action, Tech Data filed a complaint against Mainfreight in the United States District Court for the Middle District of Florida for damages relating to the loss of its Freight (the "Florida action").[2] Mainfreight and

---

[1] The Complaint does not allege the place where the Freight was stolen. Plaintiffs state that the "Shipment" was stolen "while en route." (ECF Doc. No. 6, p.2). Mainfreight's Motion to Dismiss asserts that the "cargo" was stolen while in Central Transport's warehouse in Georgia. (ECF Doc. No. 4 at ¶4).

[2] This Court properly takes judicial notice of the action pending in the United States District Court for the Middle District of Florida. Federal Rule of Evidence 201 provides: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined

Plaintiffs began discussing their respective liability in September 2014, including notice of Tech Data's action against Mainfreight. (Florida action ECF Doc. Nos. 14, 14-1) After Plaintiffs requested time to review the matter, the parties scheduled a tentative date for a conference in late October 2014, but then Plaintiffs postponed the conference call. (*Id.*)

On October 24, 2014, Plaintiffs filed this case asking this Court to limit their liability for the stolen Freight then at issue in the Florida action. Four days later, Mainfreight filed a Third-Party Complaint against Central Transport and Vitran in the Florida action. (Florida action ECF Doc. No. 6). On November 18, 2014, Mainfreight filed its Motion to Dismiss in this Court. (ECF Doc. No. 4) On November 28, 2014, Central Transport and Vitran filed a Motion to Dismiss the Third-Party Complaint in the Florida action. (Florida action ECF Doc. No. 13) On February 4, 2015, Tech Data filed an Amended Complaint against Mainfreight and Central Transport in the Florida action. (Florida action ECF Doc. No. 22)

## II. Discussion

Invoking 28 U.S.C. §1331 and 28 U.S.C. §1337, Plaintiffs ask this Court to declare that their liability, if at all, to Mainfreight for the theft of the Freight is limited to $429.70.[3] At the

---

from sources whose accuracy cannot reasonably be questioned." The Court will take judicial notice of the docketed filings in the Florida action "because, as public filings on the docket of a district court, they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Schuylkill Health Sys. v. Cardinal Health, Inc.*, Civ. A. No. 12-7065, 2014 WL 3805466, at *1, n.1 (E.D. Pa. Mar. 14, 2014) (citations omitted). *See also Calhoun v. Mann,* Civ.A. No. 08–0458, 2009 WL 159276, at *2 (E.D. Pa. Jan. 22, 2009) ("The court takes judicial notice of court records and dockets of the Federal District courts." (citation omitted)).

[3] Plaintiffs' Complaint alleges that "this action involves the liability of a motor carrier for loss and/or damage to goods transported in interstate commerce under 49 U.S.C. §14706, and the amount in controversy exceeds $10,000" thus conferring jurisdiction under 28 U.S.C. § 1331 and §1337. *See* Complaint at ¶6 (ECF Doc. No. 1). Section 14706, referred to as the Carmack Amendment, governs the "[l]iability of carriers under receipts and bills of lading." *See* 49 U.S.C. §14706; *see also Diamond Transp. Group, Inc. v. Emerald Logistics Solutions, Inc.*, Civ.A. No. 05-3828, 2006 WL 1789036 (E.D. Pa. June 21, 2006).

same time, all of the interested parties are actively litigating liability for the stolen Freight in the Florida action. In this Court, Mainfreight moves to dismiss Plaintiffs' declaratory judgment action arguing, *inter alia*, that this Court should decline to exercise its discretion because Plaintiffs' action amounts to "procedural fencing" and a "preemptive strike" to avoid the Florida action. Plaintiffs counter that a declaratory action seeking to limit liability under the Carmack Amendment is proper because their Complaint states a claim for which relief may be granted and that this Court should exercise its jurisdiction.

### A. The Court's discretion under the Declaratory Judgment Act

As a threshold matter, the Court examines whether it should exercise its discretion under the Declaratory Judgment Act (the "Act"). *See Employers Mutual Casualty Co. v. Burke Landscaping, Inc. et al.*, Civ.A. No. 13–4043, 2014 WL 981195, at *1 (E.D. Pa. Mar. 13, 2014) ("[B]efore a district court entertains the merits of a [declaratory judgment] action, 'it is necessary to determine whether the Court should even entertain [the] case under the Declaratory Judgment Act at all.'" (citation omitted)). The Court's jurisdiction under the Act is discretionary, based on "considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.* 515 U.S. 277, 288 (1995). A court may *sua sponte* exercise its discretion to decline jurisdiction over a declaratory judgment action. *See Axiall Corp. v. Int'l Chemical Workers*, Civ.A. No. 14-31, 2014 WL 4070777, at *3 (W.D. Pa. June 25, 2014) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000)).[4]

---

[4] Mainfreight did not move to dismiss, and the Court does not decide its motion, under Federal Rule of Civil Procedure 12(b)(6). Mainfreight's motion requests that this Court decline to exercise its discretion in this action. (ECF Doc. No. 4, ¶20) Plaintiffs' Opposition erroneously assumed that Mainfreight's motion was one for dismissal under Rule 12(b)(6). (ECF Doc. No. 6, p.3, n.1).

The Act provides "in a case of actual controversy within its jurisdiction," a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a). The Act "confers discretionary, rather than compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

A district court's evaluation of its discretion is guided by several factors, to the extent they are relevant, recently set out by the Court of Appeals in *Reifer v. Westport Ins. Corp.*:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer,* 751 F.3d at 146 (footnote omitted). *See also, Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224-25 (3d Cir. 1989).[5]

[5] The Court of Appeals instructed that the factors set out in *Reifer* "are non-exhaustive, and there will be situations in which district courts must consult and address other relevant case law or considerations." *Reifer*, 751 F.3d at 146. (footnote omitted).

The Court finds several *Reifer* factors to be decisive. First, the avoidance of duplicative litigation, and the concomitant interest to conserve judicial resources, is best served if this Court declined to exercise its jurisdiction over this matter. Similarly, the seventh *Reifer* factor – "prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*" – weighs in favor of declining jurisdiction. Plaintiffs seek a declaration regarding which of "three operative written instruments at issue" applies to the Freight's transport and their "respective rights and responsibilities under the applicable agreement." (ECF Doc. No. 6, pp. 2, 12) In the Amended Case Management Report submitted in the Florida action, all parties represented that "[r]esolution of this matter will depend in large part upon contract interpretation." (Florida action ECF Doc. No. 17, p.2) Moreover, in their Motion to Dismiss Mainfreight's Third-Party Complaint against them in the Florida action, Central Transport and Vitran characterize this action as "identical" to the Florida action. (Florida action ECF Doc. No. 13 at p.1) Thus, the legal issues of contract interpretation, and the determination of liability under the applicable contract or contracts, are also before the district court in the Florida action. There is no need to further duplicate and waste judicial resources having both courts consider "identical" issues. The risk of possible inconsistent verdicts from this Court and the district court in the Florida action has the potential to create *res judicata* problems. It is in the best interests of the parties to resolve the controversy in one action rather than potentially conflicting decisions from two different courts. This factor weighs in favor of declining jurisdiction.

Similarly, the first *Reifer* factor – "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy" – weighs in favor of declining jurisdiction. Even if this Court exercised its jurisdiction here, it is unlikely that any

declaration would resolve the entire matter because Central Transport is now a defendant in claims brought directly by Tech Data against it in the Florida action.

Finally, the remaining relevant *Reifer* factors – "the convenience of the parties," " the public interest in settlement of the uncertainty of obligation," and " the availability and relative convenience of other remedies" – are either neutral or weigh in favor of declining jurisdiction.[6] All parties are actively litigating in the Florida action. To the extent Central Transport and Vitran object to venue in Florida, as they suggest in their Opposition to Mainfreight's Motion to Dismiss, any such objection may be addressed in the Florida action.[7] Additionally, there is no particular "public interest in the settlement of the uncertainty of obligation" by this Court where the question of liability of Central Transport and Vitran is pending before the district court in the Florida action.

**B. The "first-filed" rule does not alter the *Reifer* analysis in this case.**

Central Transport and Vitran assert that they properly filed a declaratory action in this Court "due to the uncertainty about which agreement, and thus limitation provision," governed the transportation of the Freight, and that Mainfreight "only attempted to litigate this matter *after* the Carriers filed this action." (ECF Doc. No. 6, p. 12) (emphasis in original). To the extent this

---

[6] The fifth and eighth *Reifer* factors are not applicable here. There is no evidence in the record before this Court of any parallel state court proceeding, and this is not an insurance action. In *Reifer*, the Court of Appeals found that while "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, . . . it alone does not require such an exercise." *Reifer*, 751 F.3d at 144. The Court of Appeals directed: "In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.* Here, the Court finds that the lack of a pending parallel state proceeding is far outweighed by the factors as analyzed above.

[7] Central Transport and Vitran's Motion to Dismiss Mainfreight's Third-Party Complaint in the Florida action seeks dismissal, in part, on improper venue under Fed.R.Civ.P. 12(b)(3). (Florida action ECF Doc. No. 13).

is an argument that this Court should exercise its discretion under the "first-filed" rule, the Court finds it unpersuasive.[8]

In cases where two federal district courts have concurrent jurisdiction, the district court in the first filed case generally has jurisdiction under the "first-filed" rule. *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N.A., Inc.* 350 F.Supp.2d 620 (E.D. Pa. 2004) (citing *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988)). This general rule applies to actions under the Declaratory Judgment Act, but it is not a dispositive rule and it does not "override the district court's discretionary authority to determine whether or not to entertain a suit for declaratory relief." *Honeywell Int'l Inc. v. Int'l Union*, 502 Fed. Appx. 201, 205 (3d Cir. 2012). The "first-filed" rule is not "a rigid or inflexible rule to be mechanically applied" and "courts have rejected the rule . . . when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Drugstore-Direct, Inc.*, 350 F.Supp.2d at 623 (citing *EEOC v. Univ. of Penn.*, 850 F.2d at 976); *Honeywell Int'l,* 502 Fed.Appx. at 205. Departure from the first-filed rule may apply given the equities of a case, including "if the balance of convenience factors favor the second forum." *Drugstore-Direct, Inc.*, 350 F.Supp. 2d at 623 (citation omitted). Additionally, where parallel cases "involve a declaratory judgment and a mirror-image action seeking coercive relief . . . we ordinarily give priority to the coercive action, regardless of which case was first filed." *Axiall Corp. v. Int'l Chemical Workers*, Civ.A. No. 14-31, 2014 WL 4070777, at *4 (W.D. Pa. June 25, 2014) (citing *Honeywell Int'l, Inc.*, 502 Fed. Appx. at 206).

---

[8] We make no determination as to which action is the "first-filed." We discuss the "first-filed" rule only in the context of the argument Central Transport and Vitran appear to make regarding the timing of the filing of the instant action and the Florida action.

In *Drugstore-Direct*, the district court rejected the "first-filed" rule and declined to exercise its discretion over a declaratory action. *Drugstore-Direct*, 350 F.Supp. 2d at 623-24. In that action, the declaratory plaintiff filed its declaratory judgment action in the Eastern District of Pennsylvania and, four days later, the declaratory defendant filed an action in the Southern District of New York. *Id.* at 622. The court found that the action was an anticipatory filing based on the record of settlement negotiations between the parties as well as the "short amount of time" - four business days - between the first and second filing. *Id.* at 623. The court additionally found that allowing the declaratory action to proceed would be duplicative and a waste of judicial resources. *Id.* at 624. The court declined jurisdiction and dismissed the action.

Here, Plaintiffs filed the instant action after admittedly being notified of the liability dispute in the Florida action then pending for several months. The public record confirms that the parties were attempting to schedule a conference to discuss resolution. (*See* Florida action ECF Doc. Nos. 14, 14-1). For reasons presently unknown, Plaintiffs only then sought this Court's guidance. Four days later, Mainfreight filed its Third-Party Complaint in the Florida action. Based on this record, it appears that Plaintiffs' action was an anticipatory filing. *See e.g., Drugstore-Direct, supra*; *Crown Cork & Seal Co., Inc. v. Borden, Inc.*, 779 F.Supp. 33 (E.D. Pa. 1991). Additionally, and for all the reasons set forth above, the instant action would be duplicative of the Florida action.

Considering all the relevant *Reifer* factors, the Court concludes that practicality and wise judicial administration compels our decision to decline the exercise of jurisdiction in this matter. The accompanying Order grants Mainfreight's Motion to Dismiss.